**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

EASTERN ATLANTIC STATES REGIONAL
COUNCIL OF CARPENTERS, UBCJA,

              Petitioner,

              v.

SAGE CONSTRUCTION SOLUTIONS, LLC,

              Respondent.

Civil Action No. 23-5208 (MAS) (JBD)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court upon a petition to confirm arbitration award (ECF No. 1) filed by Petitioner Eastern Atlantic States Regional Council of Carpenters, UBCJA ("Petitioner or the "Union"). Respondent Sage Construction Solutions, LLC ("Respondent") filed an opposition and cross-motion to vacate or modify the award. (ECF Nos. 10, 10-4.) The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Union's petition to confirm arbitration award is granted and Respondent's cross-motion to vacate or modify the award is denied.

## I.      BACKGROUND

The instant action concerns an arbitration related to Respondent's former employee and two separate agreements the parties entered into. (*See generally* Pet., ECF No. 1.) The Union alleges that in December 2020, Respondent's agent Joseph Gallardo ("Gallardo") contacted

Petitioner's Senior Council Representative Thomas Iveson ("Iveson") to discuss a collective bargaining agreement (the "CBA"). (*Id.* ¶ 6.) Shortly thereafter, Petitioner and Respondent executed a short form CBA (the "Short Form CBA").[1] (*Id.*; Resp't's Opp'n Br. 9, ECF No. 10-3.) The Short Form CBA provided, in pertinent part, that the Short Form CBA may be terminated with notice via certified mail "at least 90 days prior to [the] expiration of the then current collective bargaining agreement," but otherwise remains in "full force and effect from year to year." (Pet. ¶ 8; Short Form CBA, Ex. B *7[2], ECF No. 10-1.)

In September 2022, Ramon Paige ("Paige"), a Union member, began working at Respondent's jobsite. (Pet. ¶ 10.) Paige worked 77 regular hours and 8.5 overtime hours over two weeks.[3] (*Id.* ¶ 10.) Respondent maintains, however, that Paige stole "various materials," falsified time sheets, and stole money during his employment. (Resp't's Opp'n Br. 4-5, 10; Gallardo Certification ¶¶ 10-11, ECF No. 10; *see* Ex. E. *27-28, ECF No. 10-1.) As a result of Paige's alleged misconduct, Respondent did not believe that Paige should be paid for his work. (*See* Gallardo Certification ¶ 11.)

In November 2022, after Respondent refused to pay Paige, the Union sent Respondent correspondence detailing alleged violations of the CBA.[4] (Resp't's Opp'n Br. 5, 12-13; Ex. F *30, ECF. No. 10-1.) On March 14, 2023, Iveson, on behalf of the Union, initiated arbitration against

---

[1] The parties also entered into the Concrete Polishing and Micro Topping Agreement (the "Work Agreement"). (Pet. ¶ 6.)

[2] Page numbers preceded by an asterisk reflect page numbers atop the ECF header.

[3] Paige engaged in work involving concrete polishing and micro-topping. (Pet. ¶¶ 10-11.)

[4] Specifically, the Union alleged that Respondent violated the following CBA Articles: (1) Article I "Recognition"; (2) Article XXVII "Payments of Wages and Fringes"; (3) Article XXXII "Fringe Benefits Funds"; and (4) Article XIX "Subcontractor Clause and other work that may pertain to work being performed." (Resp't's Opp'n Br. 5, 12-13; Ex. F *30, ECF. No. 10-1.)

Respondent. (Resp't's Opp'n Br. 3, 11.)[5] After becoming aware of the arbitration, Respondent asked Arbitrator Louis P. Verrone (the "Arbitrator") to "please cancel said [arbitration] scheduled for April 14" because Respondent was in the "process of filing a lawsuit against [] Iveson and [the Union]." (Resp't Opp'n Br. 3-4, 11-12; Ex. M *67, ECF. 10-2.)

In response to Respondent's cancellation request, the Arbitrator asked it to provide "a copy of the legal complaint" to "evaluate its impact" on the arbitration. (Ex. M *65-66, *see* Resp't's Opp'n Br. 3-4, 11-12.) Respondent did not provide a copy of a legal complaint, but instead demanded that the Arbitrator "cancel the hearing," reiterating that Respondent was in the "process of filing a lawsuit against [] Iveson and [the Union]." (Ex. M *65-66, *see* Resp't's Opp'n Br. 3-4, 11-12.) Having not received a proposed legal complaint as requested, the Arbitrator declined Respondent's request to postpone the arbitration. (Resp't's Opp'n Br. 4, 12.)

Arbitration commenced on April 14, 2023 but Respondent did not attend. (Pet. ¶ 19.) On April 20, 2023, the Arbitrator found that Respondent violated Articles I and II of the Work Agreement with the Union, totaling $10,629.99 in damages from several contractual violations. (*Id.* ¶ 20; Ex. O *83, ECF No. 10-2.) Respondent alleges that it did not see this arbitration award until August 2023. (Resp't's Opp'n Br. 12.) The Union now moves to confirm the arbitration award (ECF No. 2), and Respondent seeks to vacate or modify it (ECF No. 10-4).

---

[5] The arbitration was set to take place on April 14, 2023. (*See* Pet. ¶ 18.) Respondent alleges that the Union did not notify it of the arbitration, however, until one week after arbitration was initiated. (Resp't's Opp'n Br. 3, 11.) Respondent also contends that it did not have the opportunity to participate in the selection of the arbitrator or scheduling the hearing. (*Id.*; Pet'r's Reply Br. 5, ECF. No. 13.)

## II.   **LEGAL STANDARD**

"To preserve the parties' agreement for arbitration in lieu of litigation, '[t]here is a strong presumption under the [FAA] in favor of enforcing arbitration awards.'" *France v. Bernstein*, 43 F.4th 367, 377 (3d Cir. 2022) (quoting *Brentwood Med. Assocs. v. United Mine Workers*, 396 F.3d 237, 241 (3d Cir. 2005)). "[T]he standard of review of the arbitrator's decision is extremely deferential." *Id.* (quoting *Indep. Lab'y Emps.' Union, Inc. v. ExxonMobil Rsch. & Eng'g Co.*, 11 F.4th 210, 215 (3d Cir. 2021)). "If a dispute-resolution mechanism indeed constitutes arbitration under the FAA, then a district court may vacate it only under exceedingly narrow circumstances." *Dluhos v. Strasberg*, 321 F.3d 365, 370 (3d Cir. 2003). "Confirming an arbitration award under § 9 is not to be confused with litigating a dispute over the validity or accuracy of that award under § 10 or § 11. . . ." *Teamsters Loc. 177 v. United Parcel Serv.*, 966 F.3d 245, 252 (3d Cir. 2020) ("Section 9 expressly provides for confirmation in the absence of such disputes.").

Confirmation of an arbitration award is a summary proceeding authorized by § 9 of the FAA. *Id.* at 253-54 (citation omitted) ("In the interest of further explaining the path forward, we analogize the confirmation of arbitration awards to other summary proceedings in which a district court enters orders without the parties filing complaints and appearing before it to litigate a matter in full"); *see also Cont'l Ill. Nat.'l Bank & Tr. Co. of Chi. v. Chi., Rock Island & Pac. Ry. Co.*, 294 U.S. 648, 682 (1935) (holding that a district court can preside over summary proceedings "without the formality in respect of pleadings which is required in actions at law or suits in equity"). "[M]otions to vacate under FAA Section 10 also result in summary proceedings." *PG Publ'g, Inc. v. Newspaper Guild of Pittsburgh*, 19 F.4th 308, 313 (3d Cir. 2021) (citations omitted). "The summary proceedings that result from an FAA motion to confirm or vacate an arbitration award are not intended to involve complex factual determinations, other than a determination of the

4

limited statutory conditions for confirmation or grounds for refusal to confirm." *Id.* at 314 (citations omitted) ("A court can, within its discretion, decide an FAA motion without conducting a full hearing or taking additional evidence.").

## III.   **DISCUSSION**

In opposing Petitioner's motion to confirm arbitration award, Respondent moves to vacate the arbitration award under 9 U.S.C. § 10(a)(1) and § 10(a)(3), or modify it under 9 U.S.C. § 11(b). (*See* Resp't's Opp'n Br. 1-2, 6-13.) Given the presumption in favor of confirming arbitration awards under the FAA, the Court will grant Petitioner's motion to confirm unless Respondent can show that there is sufficient reason to vacate or modify the arbitration award.

Under § 10 of the FAA, the Court "may make an order vacating the [arbitration] award" where: (1) "the award was procured by corruption, fraud, or undue means"; (2) "there was evident partiality or corruption in the arbitrators"; (3) "the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced"; or (4) "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a). Under § 11(b) of the FAA, the Court "may make an order modifying or correcting the [arbitration] award" where "the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted." 9 U.S.C. § 11(b).

Here, Respondent contends the arbitration award should be vacated or modified because: (1) the Union fraudulently misrepresented the Short Form CBA and withheld the entire CBA for two years, and therefore, fraudulently procured the arbitration award; (2) the Arbitrator

impermissibly refused to postpone the arbitration hearing; and (3) the Arbitrator materially erred in rendering his arbitration decision. (*See generally* Resp't's Opp'n Br.)[6] The Court addresses each contention in turn.

### A.      Fraud under 9 U.S.C. § 10(a)(1)

Respondent first maintains that Iveson made several misrepresentations while entering into the short-form CBA. (*See* Resp't's Opp'n Br. 3, 7, 9.) These misrepresentations, Respondent contends, constitute sufficient bases to vacate the arbitration award. The Court disagrees.

"Challenges to the validity of arbitration agreements 'upon such grounds as exist at law or in equity for the revocation of any contract' can be divided into two types": (1) "challenges [to] the validity of the agreement to arbitrate", and (2) "challenges [to] the contract as a whole." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006) (citation omitted). Critically, if a respondent's claim "is fraud in the inducement of the arbitration clause itself . . . [a] federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally." *Id.* at 445 (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967)).

Importantly, Respondent does not allege that it was fraudulently induced to enter into the Short Form CBA's arbitration provision specifically. (*See generally* Resp't's Opp'n Br.) Instead, Respondent appears to contend that a promised "opt out" provision, Petitioner's alleged withholding of the CBA, and the "Union['s] threats" are the basis for its fraudulent inducement claim. (*See* Resp't's Opp'n Br. 3, 7, 9.) Notably, these contentions all pertain to Respondent's entry into the Short Form CBA generally, not specifically its agreement to the Short Form CBA's

---

[6] Respondent also argues that it should have participated in the selection of an arbitrator and the scheduling of the arbitration hearing. (Resp't's Opp'n Br. 3, 11.) These arguments too pertain to the contract in its entirety and, as such, are inappropriate for consideration by this Court.

arbitration provision. As such, this Court is not the proper forum to consider Respondent's contentions. *Buckeye*, 546 U.S. at 445 ("[I]f the claim is fraud in the inducement of the arbitration clause itself . . . [a] federal court may proceed to adjudicate it. But the [FAA's] language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.")[7] Accordingly, Respondent's first basis to vacate the arbitration award is rejected.

### B.     Improper Postponement under 9 U.S.C. § 10(a)(3)

Respondent also seemingly argues that the Arbitrator engaged in misconduct by refusing to postpone the hearing. (*See* Resp't's Opp'n Br.); 9 U.S.C. § 10(a)(3). Specifically, Respondent contends that shortly after it received a notice for an arbitration hearing, it informed the Arbitrator that he must "cancel the hearing until further notice" because Respondent planned to file a lawsuit against the Union.  (Ex. L *58, *61, ECF. No 10-2; *see* Resp't's Opp'n Br. 3, 11.) The Arbitrator declined this request because Respondent was unable to offer a sufficient basis for its cancellation demands. (Ex. L *58.)

"'Misconduct' is conduct that 'so affects the rights of a party that it may be said that [it] was deprived of a fair hearing.'" *E. Atl. States Reg'l Council of Carpenters, UBCJA v. CMS Constr., Inc.*, No. 22-1615, 2022 WL 17991613, at *6 (D.N.J. Dec. 29, 2022) (quoting *Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.*, 397 F.2d 594, 599 (3d Cir. 1968))

---

[7] Even if this Court could consider Respondent's fraudulent inducement contentions, Respondent's fraud contentions appear to be contradicted by the record. For example, pursuant to the Short Form CBA, it may be terminated with notice via certified mail "at least 90 days before expiration of the then current collective bargaining agreement," and it otherwise remains in "full force and effect from year to year." (Pet. ¶ 8; Short Form CBA *7.) Respondent does not allege that it ever attempted to terminate the CBA, and insists that the Short Form CBA had a duration of only three months. (Resp't's Opp'n Br. 3, 7, 9.) The plain language of the Short Form CBA contradicts this position. (*See* Short From CBA *7.) Moreover, Respondent's other bases for alleging fraud in the inducement, while not directly contradicted by the record, rely on limited evidence, self-serving affidavits, or inapposite caselaw. (*See* Gallardo Certification ¶¶ 8, 13, 15, 18-19, 21, 23-24; Resp't's Opp'n Br. 1-3, 6-11.)

(finding that a "fair hearing" is one where the parties have notice and an opportunity to present evidence and arguments before an impartial arbitrator). "The arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement." *Ne. Reg'l Council of Carpenters v. KRS Constr. Grp., LLC*, No. 15-47, 2015 WL 4773367, at *7 (D.N.J. Aug. 13, 2015) (citations omitted).

Here, the record does not support a finding that Respondent was deprived of a fair hearing. Respondent was given three weeks between the first notice of arbitration and the arbitration hearing, yet it declined to attend. (*See* Resp't's Br. 3-4, 11-12.) Moreover, Respondent failed to give a reasonable timeframe for when its lawsuit would be filed, or for how long it would take it to properly prepare for the arbitration. Instead, Respondent simply demanded that the Arbitrator "cancel the hearing" because Respondent was "in the process" of filing a lawsuit that it failed to provide evidence of. (Ex. M *65-67; *see* Resp't's Opp'n Br. 3-4, 11-12.) On these facts and allegations, Respondent has not shown how the Arbitrator's decision to proceed with the arbitration constitutes "misconduct," especially where Respondent voluntarily declined to attend the arbitration hearing despite having adequate notice of when it was to occur. For these reasons, the Court denies Respondent's motion to vacate under 9 U.S.C. § 10(a)(3).

**C.    Error in Arbitration Award under 9 U.S.C. § 11(b)**

Finally, Respondent contends that the Arbitrator erred in rendering his arbitration award.[8] (Resp't's Opp'n Br. 5, 12-13.) Accordingly, Respondent asks the Court to modify the arbitration award to omit certain findings and an audit.

---

[8] In Step I of the Union Grievance, Respondent received violations for Articles I "Recognition", XXVII "Payments of Wages and Fringes", XXXII "Fringe Benefits Funds", and XIX "Subcontractor Clause and other work that may pertain to work being perform[ed]." (Resp't's Opp'n Br. 5, 12-13; Ex. F *30.) The Arbitrator ultimately found violations under Article I and II in the Work Agreement and ordered an audit of Respondent's payroll and records. (Ex. O *83.)

To this end, Respondent's contentions are either misguided or unclear. In reviewing the Arbitrator's decision and award, the Arbitrator did not base his award on Article II of the CBA as Respondent contends, but rather Articles I and II of the Work Agreement specifically. (Ex. O *83.) Respondent does not parse out, either in argument or case law, how or why the Arbitrator's award based on the Work Agreement improperly strays away from the Grievance such that a modification is warranted. (Resp't's Opp'n Br. 5, 12-13; Ex. F. *30; Ex. O. *83.) The same can be said for Respondent's contentions regarding the audit: Respondent provides no case law and little reasoning to justify its request to omit the audit from the arbitration award. (Resp't's Opp'n Br. 5, 12-13.) Based on Respondent's arguments and dearth of case law, the Court can ascertain no basis upon which it can grant Respondent's request. Accordingly, Respondent's motion to modify the arbitration award is denied.

As Respondent fails to identify any sufficient basis to vacate or modify the arbitration award, its motion must be denied. Consequently, in the absence of valid disputes under 9 U.S.C. §§ 10-11, and pursuant to 9 U.S.C. § 9, Petitioner's motion to confirm the arbitration award is granted.

IV.    **CONCLUSION**

For the reasons stated above, the Court grants Petitioner's petition to confirm the arbitration award, and denies Respondent's cross-motion to vacate or modify the award. The Court will enter an Order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

9